Stephen F. Henry, Esq. SBN 142336
2625 Alcatraz Avenue, No. 615
Berkeley, California 94705
Telephone: (510) 898-1883
Facsimile: (510) 295-2516

Attorney for Plaintiff MYRICK TANTIADO

William I. Edlund, State Bar No. 25013
Alyson L. Huber, State Bar No. 202713
BARTKO, ZANKEL, TARRANT & MILLER
A Professional Corporation
900 Front Street, Suite 300
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152

Michael L. Rosen, admitted *Pro Hac Vice*
John Duke, admitted *Pro Hac Vice*
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts 02210
Telephone: (617) 832-1231
Facsimile: (617) 832-7000

Attorneys for Defendant
POWER MEDICAL INTERVENTIONS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MYRICK TANTIADO, an individual, | No. C 07-02874 EDL |
| Plaintiff, | **JOINT CASE MANAGEMENT CONFERENCE STATEMENT and [Proposed] ORDER** |
| v. | |
| POWER MEDICAL INTERVENTIONS, a Pennsylvania corporation, and DOES ONE through FIFTY, inclusive, | Date: February 29, 2008<br>Time: 8:30 a.m.<br>19th Floor, Courtroom 8 |
| Defendants. | Original filing date: April 6, 2007<br>Removal date: June 1, 2007 |

Plaintiff Myrick Tantiado ("Plaintiff") and Defendant Power Medical Interventions ("Defendant") (collectively referred to as the "Parties"), by and through their respective counsel, hereby submit the following Joint Case Management Conference Statement and [Proposed] Order.

-1-

1.   Jurisdiction and Service

Jurisdiction is based on diversity of citizenship. No issues exist regarding personnel jurisdiction or venue. Service has been completed, no parties remain to be served and there are no issues with regard to service.

2.   A brief description of the events underlying the action:

According to Plaintiff:

Myrick Tantiado, an employee of Power Medical Interventions ("PMI") from July 1, 2004 to July 10, 2006, sold PMI's surgical stapling product, SurgAssist Computer Powered Stapling System.

PMI wrongfully terminated Mr. Tantiado for complaining about the dangerous misuse of PMI's surgical stapling product in an effort to silence his concerns and avoid an investigation by the Food and Drug Administration into PMI's improper sale of a product for a purpose for which it was not appropriate to be used. Mr. Tantiado's complaints regarding the integrity of the SurgAssist Computer Powered Stapling System pertained specifically to the Circular Stapling line such as the Circular Stapling Unit, 25mm (CS25) and the Circular Stapling Unit, 29mm (CS29). Mr. Tantiado explained to his superior, Rob Chase, the Western Regional Sales Manager, that he did not feel comfortable selling this product given that numerous surgeons had approached him regarding complications to their patients on whom they had performed colectomy procedures with the CS25 and CS29 devices.

In addition, when PMI terminated Mr. Tantiado, it failed to pay him for his twenty days of accrued but unpaid vacation time and his accrued but unreimbursed out-of-pocket expenses, which he incurred in connection with performing his job responsibilities for the company. Instead, the company purported to offset against Mr. Tantiado's expense reimbursement certain amounts that it claimed Mr. Tantiado owed the company for sales commissions it had already paid to Mr. Tantiado for products returned to the company after Mr. Tandiado's departure.

-2-

Plaintiff has sued Defendant for wrongful termination in violation of public policy with respect to his termination and violation of the California Labor Code with respect to failure to pay accrued vacation pay and unreimbursed expenses.

According to Defendants:

Defendant denies the allegations of Plaintiff's Complaint. Defendant contends that it terminated Plaintiff's employment not because of any complaint regarding PMI's SurgAssist Computer Powered Stapling System, but because of Plaintiff's poor job performance. Defendant further contends that months before Plaintiff's employment terminated, a customer informed Plaintiff that it wished to return SurgAssist products that it had purchased and for which Plaintiff had already received a commission payment. Under PMI's commission policy, any sales commissions paid to its sales representatives are subject to offset if a customer subsequently returns a product for which a sales representative had already received a commission. However, Plaintiff refused to process this customer's return before his employment terminated. Accordingly, Defendant offset the commission it had previously paid to Plaintiff on this sale against Plaintiff's final expense reimbursement payment. Defendant denies that it violated any laws.

Principal Factual Issues in Dispute:

The principal factual issue in dispute is whether Plaintiff's employment terminated because he made a complaint regarding PMI's SurgAssist Computer Powered Stapling System or poor job performance. Additional factual issues may include the amount of Plaintiff's damages, if any. The parties will address these issues during discovery.

3.   The principal legal issues which the parties dispute:

The principal legal issue is whether an employer may offset a commission payment made to a sales employee against an expense reimbursement payment where the employer's commission policy provides that sales commissions are subject to offset if a customer subsequently returns a product for which a sales representative had already received a commission.

-3-

4. <u>Motions.</u>

Plaintiff may bring a Motion for Summary Adjudication with respect to the Labor Code claims. Defendant may bring a Motion for Summary Adjudication with respect to Plaintiff's claims.

5. <u>Amendment of Pleadings:</u>

Plaintiff anticipates no amendment to his pleadings.

6. <u>Evidence Preservation:</u>

Plaintiff has maintained records that were in his possession when he was terminated. Defendant has maintained records relating to Plaintiff's employment and the claims herein and has taken steps to preserve such information.

7. <u>Initial Disclosures:</u>

The Parties have made their initial disclosures.

8. <u>Discovery:</u>

Neither party anticipates any stipulated discovery limits different from those set forth in the federal rules of civil procedure. A proposed discovery schedule is set forth in paragraph 17 below. The parties will produce electronically stored information on paper to the extent practicable. The parties further agree that if privileged material or attorney work product is inadvertently produced, the producing party may designate the material as privileged or work product after the fact without waiver of the privilege or work product protection.

9. <u>Class action:</u>

This case is not a class action.

10. <u>Related cases:</u>

There are no related cases.

11. <u>Relief:</u>

Plaintiff alleges that he is entitled to the following relief:

Plaintiff's cause of action for wrongful termination in violation of public policy supports damages for lost past and future wages and benefits, including salary, commissions,

-4-

bonuses, stock options and grants, retirement benefits and medical/dental benefits. Calculation of these damages will depend on discovery from Defendant and expert analysis of the difference between Plaintiff's prospects with Defendant and his actual and prospective income from his current employer. The estimated loss to date exceeds $53,647. This amount does not including future losses based on the difference between his income and benefits with Defendant and his current income and benefits. This amount does not include the value of stock options after Defendant's Initial Public Offering in September, 2007. The cause of action also supports a claim for emotional distress and punitive damages.

Plaintiff's cause of action for violation of the Labor Code supports damages for failure to pay vacation pay in the amount of $2,800, failure to pay expenses in the amount of $4,464, and waiting time penalties of $8,400 (calculated by multiplying Plaintiff's average daily rate of pay by Defendant by 30 days). This cause of action also supports a claim for attorneys fees.

12. <u>Settlement and ADR:</u>

Mediation was unsuccessful.

13. <u>Consent to Magistrate:</u>

Plaintiff consents to assignment to a United States Magistrate Judge for trial. Defendant does not consent to assignment to a United States Magistrate Judge for trial.

14. <u>Other Reference:</u>

Neither party believes that any reference is necessary or useful at this early point.

15. <u>Narrowing of Issues:</u>

Plaintiff believes that the issues are very narrow and depend on the determination of factual issues in dispute with regard to Plaintiff's complaints about Defendant's product and Defendant's reason for terminating Plaintiff. The Labor Code violations will be determined based on determination of the payments owed to Plaintiff under the vacation and commission plan applicable to Plaintiff and the payments actually made to Plaintiff.

16. Expedited Schedule:

Neither party believes that this is a case that can be handled on an expedited basis.

17. Scheduling.

The parties proposes the following schedule for this case:

- Expert disclosures by May 9, 2008, Rebuttal expert disclosures by June 9, 2008
- Non-expert discovery completed by June 9, 2008
- Completion of expert discovery by July 7, 2008
- Motions pursuant to Fed. R. Civ. P. 56 filed by July 18, 2008
- Opposition to motions pursuant to Fed. R. Civ. P. 56 filed by August 8, 2008
- Replies to motions pursuant to Fed. R. Civ. P. 56 filed by August 15, 2008
- Hearing on motions pursuant to Fed. R. Civ. P. 56 August 22, 2008
- Trial beginning on September 22, 2008.

18. Trial.

The trial will be before a jury. The parties anticipate that trial will take approximately 5 court days.

19. Disclosure of Non-party Interested Entities or Persons.

Neither party is aware of any individual or entity other than the named parties to this action that have either a financial interest in the subject matter of this controversy or in a party to this case or any other kind of interest that could be substantially affected by the outcome of this case. Defendant has filed its "Certification of Interested Entities or Persons" and discloses that discloses that Boston Scientific Corporation, a publicly held corporation, owns more than 10% of the stock of defendant.

20. Other Matters.

There are no other matters at this time.

SIGNATURE AND CERTIFICATION OF LEAD TRIAL COUNSEL

Pursuant to Civil Local Rule 16-12, each of the undersigned certifies that he or she has read the brochure entitled "Dispute Resolution Procedures in the Northern District of

California," discussed the available dispute resolution options provided by the court and private entities and has considered whether this case might benefit from any of the available dispute resolution options.

DATED: February 19, 2008

                                              By: /s/Stephen F. Henry
                                                            Stephen F. Henry
                                                            Attorney for Plaintiff
                                                            MYRICK TANTIADO

DATED: February 19, 2008

                                              BARTKO, ZANKEL, TARRANT & MILLER
                                              A Professional Corporation

                                              By: /s/ Alyson L. Huber
                                                            Alyson L. Huber
                                                            Attorneys for Defendant
                                              POWER MEDICAL INTERVENTIONS

**CASE MANAGEMENT ORDER**

The Case Management Statement and Proposed Order is hereby adopted by the Court as the Case Management Order for the case and the parties are ordered to comply with this Order.

IT IS SO ORDERED.

_____
U.S. NORTHERN DISTRICT COURT JUDGE

-8-