1

STEPHEN F. HENRY, ESQ.

STATE BAR # 142336

2

2625 Alcatraz Avenue, # 615

Berkeley, California 94705

3

Telephone: (510) 898-1883

Facsimile (510) 295-2516

4

shenry@SHenrylaw.com

5

MARK L. MOSLEY (State Bar # 134349)

6

MOSCONE EMBLIDGE & QUADRA, LLP

220 Montgomery Street. Suite 2100

7

San Francisco, CA 94104

Telephone: (415) 592-4342

8

Facsimile: (415) 362-2006

mmosley@meqlaw.com

9

Attorneys for Plaintiff

10

11

UNITED STATES DISTRICT COURT

12

FOR THE NORTHER DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| MYRICK TANTIADO, an individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>POWER MEDICAL INTERVENTIONS, a<br>Pennsylvania corporation, and DOES ONE<br>through FIFTY, inclusive,<br><br>    Defendants. | Case No. C 07-02874 CRB MED<br><br>DECLARATION OF STEPHEN F.<br>HENRY IN SUPPORT OF<br>PLAINTIFF'S OPPOSITION TO<br>MOTION FOR SUMMARY<br>ADJUDICATION<br><br><br>Original filing date: April 6, 2007<br>Removal date: June 1, 2007 |

14

15

16

17

18

19

20

I, Stephen Henry, declare:

21

    1.  I am attorney for plaintiff in the above entitled matter.  I have personal knowledge

22

of the facts in this Declaration and if called upon to testify, I could and would testify competently

23

to the facts herein.

24

    2.  Attached to this Declaration as Exhibit A is a true and correct copy of Defendant

25

Power Medical Intervention's Supplemental Answers to Plaintiff's First Set Of Interrogatories

26

received from Defendant.

27

28

1        3.   Attached to this Declaration as Exhibit B is a true and correct copy of excerpts of

2  the Deposition of Myrick Tantiado.

3        I declare under penalty of perjury under the laws of California and the United States that

4  the foregoing is true and correct.  Executed in Berkeley, California on August 15, 2008

                         STEPHEN F. HENRY

# EXHIBIT A

1  William I. Edlund, State Bar No. 25013
   Alyson L. Huber, State Bar No. 202713
2  BARTKO, ZANKEL, TARRANT & MILLER
   A Professional Corporation
3  900 Front Street, Suite 300
   San Francisco, California  94111
   Telephone: (415) 956-1900
4  Facsimile: (415) 956-1152
   wedlund@bztm.com
5  ahuber@bztm.com

6  Michael L. Rosen, *Admitted Pro Hac Vice*
   John E. Duke, *Admitted Pro Hac Vice*
7  FOLEY HOAG LLP
8  155 Seaport Boulevard
   Boston, MA  02210
9  Telephone:  (617) 832-1000
   Facsimile:  (617) 832-7000
10 mrosen@foleyhoag.com
   jduke@foleyhoag.com
11
   Attorneys for Defendant Power Medical Interventions
12

13              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
14

15 | MYRICK TANTIADO, an individual,        | Case No. C 07-02874 EDL |
   |                                         |                          |
16 | Plaintiff,                              |                          |
   |                                         |                          |
17 | vs.                                     | **DEFENDANT POWER MEDICAL** |
   |                                         | **INTERVENTION'S SUPPLEMENTAL** |
18 | POWER MEDICAL INTERVENTIONS, a          | **ANSWERS TO PLAINTIFF'S FIRST** |
   | Pennsylvania corporation, and DOES ONE  | **SET OF INTERROGATORIES** |
19 | through FIFTY, inclusive,               |                          |
   |                                         |                          |
20 | Defendants.                             |                          |
21

22         Defendant Power Medical Interventions, Inc. ("PMI"), by and through its attorneys,

23 hereby supplements its responses to Plaintiff's First Set of Interrogatories (the "Interrogatories")

24 as follows:

25

26

27

28

## PRELIMINARY STATEMENT

1.      These answers are made solely for the purposes of this action.  Each answer is subject to all objections as to competence, relevance, materiality, propriety and admissibility, as well as to any and all other objections on any grounds that would require the exclusion of any answer or any portion thereof if any of said answer were offered in evidence, all of which objections and grounds are hereby expressly reserved and may be interposed at the time of any deposition or at or before any hearing or trial in this matter.

2.      The following answers are based on information presently available to and located by PMI and its attorneys and, except for explicit facts expressly set forth herein, no incidental or implied admissions are intended hereby.  The fact that PMI answers or objects to any Interrogatory or part thereof is not intended and shall not be construed as an admission that PMI accepts or admits the existence of any facts set forth in or assumed by such Interrogatory, or that such response or objection constitutes admissible evidence.  The fact that PMI answers all, or part, of any Interrogatory is not intended and shall not be construed as a waiver by PMI of all, or any part, of any objection to any Interrogatory made herein.

3.      PMI has not completed its investigation of this action, has not completed its discovery or trial preparation, and may discover additional facts and/or documents responsive to the Interrogatories in the future.  These answers hereinafter are based on PMI's knowledge, information and belief at this time, and are made without prejudice to the following objections, and are based on PMI's diligent search of those records that it has located and that it reasonably believes would contain the information sought.  Nevertheless, some of the information sought by Plaintiff's Interrogatories are not routinely compiled by PMI, and are not readily accessible to any agent or employee of PMI.  Furthermore, these answers were prepared based on PMI's good faith interpretations and understanding of the Interrogatories and are subject to correction for

1    inadvertent errors or omissions, if any.  PMI reserves the right to refer to, to conduct discovery

2    with reference to or to offer into evidence at the time of trial, any and all facts, evidence,

3    documents and things developed during the course of discovery and trial preparation,

4    notwithstanding the reference to facts, evidence, documents and things in these answers.  PMI

5    assumes no obligation to voluntarily supplement or amend these answers to reflect information,

6    evidence, documents or things discovered following service of these answers.  Nevertheless,

7    PMI specifically reserves the right to amend and/or supplement these answers at any time.

8         4.    To the extent the Interrogatories purport to seek information which is protected by

9    the attorney-client privilege and/or the attorney work-product privilege or doctrine, PMI will not

10    provide any such information and will assume that the Interrogatories apply only to that

11    information falling outside the scope of the attorney-client privilege and the attorney work-

12    product privilege or doctrine.  Inadvertent disclosure of any such privileged information shall not

13    constitute a waiver of any privilege or ground for objecting to disclosing such information and

14    shall not waive PMI's right to object to the use of such information.

15    

16    

## GENERAL OBJECTIONS

17         1.    PMI objects to each and every Interrogatory to the extent that it purports to

18    impose upon PMI obligations in excess of those set forth in the Federal Rules of Civil Procedure.

19         2.    PMI objects to each and every Interrogatory to the extent that it seeks information

20    subject to the attorney-client privilege, the work product doctrine, or any other privilege or

21    protection, or information otherwise not discoverable within the meaning of the Federal Rules of

22    Civil Procedure.

23         3.    PMI objects to each and every Interrogatory to the extent that the discovery

24    sought by any such Interrogatory is unreasonably cumulative or duplicative, or is obtainable

25    from some other source that is more convenient, less burdensome, or less expensive, and to the

extent compliance with any such request would be unduly burdensome, expensive, annoying and oppressive, as prohibited by Rule 26(b) of the Federal Rules of Civil Procedure.

4.    PMI objects to each and every Interrogatory that is not time limited as overly broad.

7.    PMI objects to each and every Interrogatory to the extent that it seeks confidential or proprietary information, including business information and/or business trade secrets, whether concerning itself or a third party, or concerning confidential personal information about individuals, including PMI's employees.

## SPECIFIC OBJECTIONS AND RESPONSES

PMI's specific objections and responses are subject to and without waiver of the foregoing general objections.  PMI reserves the right to revise, supplement, or clarify any of the answers set forth below.

**INTERROGATORY NO. 1:**

For each denial, contained in your Answer to Plaintiff's Complaint, of factual allegations asserted in Plaintiff's Complaint, please state the factual basis for that denial.

**ANSWER:**

PMI objects to this interrogatory because it seeks information subject to the attorney-client privilege and the work product doctrine.  PMI also objects to this interrogatory because it seeks legal conclusions.  PMI further objects to this interrogatory insofar as it seeks confidential information.  Subject to and without waiving the above general and specific objections, PMI refers Plaintiff to its answers to the remaining interrogatories, the documents PMI will produce in response to Plaintiff's Document Requests, and PMI's disclosures.

**INTERROGATORY NO. 2:**

For each Affirmative Defense contained in your Answer to Plaintiff's Complaint, state the factual and legal bases for that Affirmative Defense.

**ANSWER:**

PMI objects to this interrogatory because it seeks information subject to the attorney-client privilege and the work product doctrine. PMI also objects to this interrogatory because it seeks legal conclusions. PMI further objects to this interrogatory insofar as it seeks confidential information. Subject to and without waving the above general and specific objections, PMI states:

- <u>First Defense</u>: Myrick Tantiado was an at-will employee who could be terminated for any reason or no reason at all. Nevertheless, Myrick Tantiado's employment with PMI was terminated for poor performance. Moreover, PMI paid Myrick Tantiado everything he was owed under the applicable commission policy, PMI's expense reimbursement policy, and PMI's vacation policy.
- <u>Second Defense</u>: On information and belief, Myrick Tantiado was either nonresponsive or an obstacle to the return of the products for which the sales commission offset is the basis of his claim for unreimbursed expenses.
- <u>Third Defense</u>: Myrick Tantiado was an at-will employee who could be terminated for any reason or no reason at all.
- <u>Fifth Defense</u>: Myrick Tantiado did not fulfill the expectations of his position while an employee of PMI.

**INTERROGATORY NO. 3:**

Identify all reasons for the termination of Myrick Tantiado by Defendant.

**ANSWER:**

PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the above general and specific objections, PMI states that Myrick Tantiado's employment with PMI terminated because of his poor job performance.

1 | **INTERROGATORY NO. 4:**

2   Identify each person who participated in making the decision to terminate Myrick

3 Tantiado from employment by Defendant.

4 | **ANSWER:**

5   PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome,

6 and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and

7 without waiving the above general and specific objections, PMI states that John Roache, PMI's

8 Vice President of Sales at the time and who is no longer employed by PMI, made the decision to

9 terminate Myrick Tantiado's employment with PMI.

10 | **INTERROGATORY NO. 5:**

11   Identify each document relied upon, considered or referred to in making the decision to

12 terminate Myrick Tantiado.

13 | **ANSWER:**

14   PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome,

15 and not reasonably calculated to lead to the discovery of admissible evidence.  PMI further

16 objects to this interrogatory to the extent that it seeks information subject to the attorney-client

17 privilege or the work product doctrine.  Subject to and without waiving the above general and

18 specific objections, PMI states that it will produce non-privileged documents in response to

19 Document Request No. 4 from which information responsive to this interrogatory may be

20 obtained.

21 | **INTERROGATORY NO. 6:**

22   Identify each complaint received at any time by Defendant from any person or entity

23 regarding the performance of the SurgAssist Computer Powered Stapling System.

24 | **ANSWER:**

25   PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome,

26 and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and

27 without waiving the above general and specific objections, PMI states that it will produce non-

28 |

1  privileged documents containing, describing, or communicating a complaint received by PMI

2  regarding the performance of the SurgAssist Computer Powered Stapling System created or

3  received by PMI since January 1, 2004 upon entry by the Court of an appropriate Confidentiality

4  Agreement and Protective Order in response to Document Request No. 5 from which

5  information responsive to this interrogatory may be obtained.

6  **INTERROGATORY NO. 7:**

7      Identify and describe each complaint received at any time by Defendant from any person

8  or entity regarding the performance of the Circular Stapling Unit, 25mm (CS25).

9  **ANSWER:**

10      PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome,

11  and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and

12  without waiving the above general and specific objections, PMI states that it will produce non-

13  privileged documents containing, describing, or communicating a complaint received by PMI

14  regarding the performance of the Circular Stapling Unit 25mm (CS25) created or received by

15  PMI since January 1, 2004 in response to Document Request No. 6 from which information

16  responsive to this interrogatory may be obtained upon entry by the Court of an appropriate

17  Confidentiality Agreement and Protective Order.

18  **INTERROGATORY NO. 8:**

19      Identify and describe each complaint received at any time by Defendant from any person

20  or entity regarding the performance of the Circular Stapling Unit, 29mm (CS29).

21  **ANSWER:**

22      PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome,

23  and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and

24  without waiving the above general and specific objections, PMI states that it will produce non-

25  privileged documents containing, describing, or communicating a complaint received by PMI

26  regarding the performance of the Circular Stapling Unit 29mm (CS29) created or received by

27  PMI since January 1, 2004 in response to Document Request No. 7 from which information

28

1    responsive to this interrogatory may be obtained upon entry by the Court of an appropriate

2    Confidentiality Agreement and Protective Order.

3    **INTERROGATORY NO. 9:**

4           Identify and describe each action of any kind and at any time taken by the United States

5    Food and Drug Administration regarding the SurgAssist Computer Powered Stapling System, the

6    Circular Stapling Unit, 25mm (CS25) and/or the Circular Stapling Unit, 29mm (CS29).

7    **ANSWER:**

8           PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome,

9    and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and

10   without waiving the above general and specific objections, PMI states that it will produce non-

11   privileged documents created or received by PMI since January 1, 2004 in response to Document

12   Request No. 8 from which information responsive to this interrogatory may be obtained.

13   **INTERROGATORY NO. 10:**

14          Identify and describe each communication of any kind and at any time from the United

15   States Food and Drug Administration regarding the SurgAssist Computer Powered Stapling

16   System, the Circular Stapling Unit, 25mm (CS25) and/or the Circular Stapling Unit, 29mm

17   (CS29).

18   **ANSWER:**

19          PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome,

20   and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and

21   without waiving the above general and specific objections, PMI states that it will produce non-

22   privileged documents created or received by PMI since January 1, 2004 in response to Document

23   Request No. 9 from which information responsive to this interrogatory may be obtained.

24   **INTERROGATORY NO. 11:**

25          Identify and describe each communication of any kind and at any time to the United

26   States Food and Drug Administration regarding the SurgAssist Computer Powered Stapling

27

28

1  System, the Circular Stapling Unit, 25mm (CS25) and/or the Circular Stapling Unit, 29mm

2  (CS29).

3  **ANSWER:**

4      PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome,

5  and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and

6  without waiving the above general and specific objections, PMI states that it will produce non-

7  privileged documents created or received by PMI since January 1, 2004 in response to Document

8  Request No. 10 from which information responsive to this interrogatory may be obtained.

9  **INTERROGATORY NO. 12:**

10      Identify and describe each communication of any kind and at any time from any medical

11  doctor regarding the SurgAssist Computer Powered Stapling System, the Circular Stapling Unit,

12  25mm (CS25) and/or the Circular Stapling Unit, 29mm (CS29).

13  **ANSWER:**

14      PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome,

15  and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and

16  without waiving the above general and specific objections, PMI states that it will produce non-

17  privileged documents containing, describing, or communicating a complaint from any medical

18  doctor regarding the SurgAssist Computer Powered Stapling System, the Circular Stapling Unit,

19  25mm (CS25) and/or the Circular Stapling Unit, 29mm (CS29) created or received by PMI since

20  January 1, 2004, if any, upon entry by the Court of an appropriate Confidentiality Agreement and

21  Protective Order in response to Document Request No. 11 from which information responsive to

22  this interrogatory may be obtained.

23  **INTERROGATORY NO. 13:**

24      Identify and describe each communication of any kind and at any time by Myrick

25  Tantiado regarding the SurgAssist Computer Powered Stapling System, the Circular Stapling

26  Unit, 25mm (CS25) and/or the Circular Stapling Unit, 29mm (CS29).

27

28

1  **ANSWER:**

2     PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome,

3  and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and

4  without waiving the above general and specific objections, PMI states that it will produce non-

5  privileged documents containing, describing or communicating a complaint by Myrick Tantiado

6  regarding the SurgAssist Computer Powered Stapling System, the Circular Stapling Unit, 25mm

7  (CS25) and/or the Circular Stapling Unit, 29mm (CS29), if any, upon entry by the Court of an

8  appropriate Confidentiality Agreement and Protective Order in response to Document Request

9  No. 12 from which information responsive to this interrogatory may be obtained.

10  **INTERROGATORY NO. 14:**

11     Please state how many vacation days Myrick Tantiado accrued each year while working

12  for Defendant.

13  **ANSWER:**

14     PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome,

15  and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and

16  without waiving the above general and specific objections, PMI states that under the terms of

17  PMI's vacation policy Myrick Tantiado accrued 10 vacation days per year at a rate of 0.833 days

18  per month.

19  **INTERROGATORY NO. 15:**

20     Please state how many vacation days Myrick Tantiado used each year while working for

21  Defendant.

22  **ANSWER:**

23     PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome,

24  and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and

25  without waiving the above general and specific objections, PMI states that Myrick Tantiado did

26  not use any vacation days in 2006.

27

28

**INTERROGATORY NO. 16:**

Please state how many accrued and unused vacation days Myrick Tantiado had at the time of his termination by Defendant.

**ANSWER:**

PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the above general and specific objections, PMI states that under the terms of PMI's vacation policy Myrick Tantiado had 5 days of accrued and unused vacation days at the time his employment with PMI terminated.

**INTERROGATORY NO. 17:**

Please state whether Myrick Tantiado was paid for all of his accrued and unused vacation days at the time of his termination by Defendant.

**ANSWER:**

PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the above general and specific objections, PMI states that Myrick Tantiado was not paid for all accrued and unused vacation days at the time his employment with PMI terminated.

**INTERROGATORY NO. 18:**

Please state the amount of reimbursable expenses were claimed by Myrick Tantiado at the time of his termination by Defendant.

**ANSWER:**

PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the above general and specific objections, PMI states that it does not know the amount of reimbursable expenses Myrick Tantiado claimed at the time his employment with

PMI terminated. However, in an email from Myrick Tantiado to Rita Esposito dated August 7, 2006, Myrick Tantiado claimed $4,464.03 in reimbursable expenses.

**INTERROGATORY NO. 19:**

Please state the amount of reimbursable expenses accrued by Myrick Tantiado remained unreimbursed by Defendant at the time of his termination by Defendant.

**ANSWER:**

PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the above general and specific objections, PMI states that no reimbursable expenses accrued by Myrick Tantiado remained unreimbursed by PMI at the time his employment with PMI terminated.

**INTERROGATORY NO. 20:**

Please state all reasons why Defendant did not reimburse all reimbursable expenses accrued by Myrick Tantiado at the time of his termination by Defendant.

**ANSWER:**

PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the above general and specific abjections, PMI states that no reimbursable expenses accrued by Myrick Tantiado remained unreimbursed by PMI at the time his employment with PMI terminated.

**INTERROGATORY NO. 21:**

Please describe Defendant's commission policy.

**ANSWER:**

PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the above general and specific objections, PMI states that it will produce

1  documents in response to Document Request No. 20 from which information responsive to this

2  interrogatory may be obtained.

3  **INTERROGATORY NO. 22:**

4      Please describe Defendant's policy regarding offsetting commissions upon return of a

5  product.

6  **ANSWER:**

7      PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome,

8  and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and

9  without waiving the above general and specific objections, PMI states that any sales

10 commissions paid to its sales representatives are subject to offset if those same products are

11 subsequently returned by customers.

12 **INTERROGATORY NO. 23:**

13     Please identify how Plaintiff was informed of Defendant's commission policy.

14 **ANSWER:**

15     PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome,

16 and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and

17 without waiving the above general and specific objections, PMI states that Plaintiff was informed

18 of PMI's commission policy in a letter from Rita Esposito to Myrick Tantiado dated July 1, 2004

19 offer letter; in a letter from Rita Esposito to Myrick Tantiado dated December 29, 2004; in PMI's

20 2006 Sales Compensation Plan, a copy of which was distributed to Myrick Tantiado; in a letter

21 from Rita Esposito to Myrick Tantiado dated March 24, 2006; and in a letter from Rita Esposito

22 to Myrick Tantiado dated March 29, 2006.

23 **INTERROGATORY NO. 24:**

24     Please identify how Plaintiff was informed of Defendant's policy regarding offsetting

25 commissions upon return of a product.

26

27

28

1    **ANSWER:**

2       PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome,

3    and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and

4    without waiver the above general and specific objections, PMI states that Myrick Tantiado was

5    informed of its policy regarding offsetting commissions upon return of a product in a letter from

6    Rita Esposito to Myrick Tantiado dated July 1, 2004 offer letter; in a letter from Rita Esposito to

7    Myrick Tantiado dated December 29, 2004; in PMI's 2006 Sales Compensation Plan, a copy of

8    which was distributed to Myrick Tantiado; in a letter from Rita Esposito to Myrick Tantiado

9    dated March 24, 2006; in a letter from Rita Esposito to Myrick Tantiado dated March 29, 2006;

10   and orally by his manager as well as in training after hire.

11   **INTERROGATORY NO. 25:**

12       Please identify what product was returned to Defendant which created the basis for

13   offsetting Plaintiff's commission at the time of his termination by Defendant.

14   **ANSWER:**

15       PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome,

16   and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and

17   without waiving the above general and specific objections, PMI states that it will produce

18   documents in response to Document Request No. 24 from which information responsive to this

19   interrogatory may be obtained.

20   **INTERROGATORY NO. 26:**

21       Please identify who returned the product to Defendant which created the basis for

22   offsetting Plaintiff's commission at the time of his termination by Defendant.

23   **ANSWER:**

24       PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome,

25   and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and

26   without waiving the above general and specific objections, PMI states that the University of

27   California San Francisco returned the products.

28   Defendant Power Medical Interventions Supplemental Answers to    14     CASE NO. C 07 – 02874 EDL
        Plaintiff's First Set of Interrogatories

1

**INTERROGATORY NO. 27:**

2

     Please identify the reason stated for the return by the person or entity who returned the

3

product to Defendant which created the basis for offsetting Plaintiff's commission at the time of

4

his termination by Defendant.

5

**ANSWER:**

6

     PMI objects to this interrogatory because it is vague, overly broad, unduly burdensome,

7

and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and

8

without waiving the above general and specific objections, PMI states that the University of

9

California San Francisco did not give a reason for returning the products the commission for

10

which was offset against Myrick Tantiado's final expense reimbursement.  Further answering,

11

PMI states that the University of California San Francisco did not need to give a reason since it

12

first attempted to return the products in February 2006 during the evaluation period for these

13

products.

14

15

DATED: October 2**6**, 2007          BARTKO, ZANKEL, TARRANT & MILLER
                                   A Professional Corporation

16

                                   FOLEY HOAG LLP

17

18

                                   By: _____

19

                                              John E. Duke

20

                                       Attorneys for Defendant
                         POWER MEDICAL INTERVENTIONS, INC.

21

22

23

24

25

26

27

28

1

## VERIFICATION

2

I, Rita Esposito, declare as follows:

3

I presently am Director, Human Resources of Power Medical Interventions, Inc. I have

4

read Defendant Power Medical Interventions Supplemental Answers to Plaintiff's First Set of

5

Interrogatories ("Responses") and, to the best of my knowledge, information, and belief, the

6

Responses are accurate.

7

I verify under penalty of perjury under the laws of the United States of America that the

8

foregoing is true and correct.

9

Executed on October 26, 2007, in Langhorne, Pennsylvania.

10

11

_Rita Esposito_
                                                                    Rita Esposito

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

--oOo--

MYRICK TANTIADO, an individual,)

                              )

        Plaintiff,        )

    vs.                ) Case No. C07-02874

                       ) CRB MED

POWER MEDICAL INTERVENTIONS, a )

Pennsylvania corporation, and )

DOES ONE through FIFTY,      )

inclusive,              )

                       )

        Defendants.      )

                       )

# CERTIFIED COPY

DEPOSITION OF

MYRICK TANTIADO

————————

April 10, 2008

REPORTED BY:  CAROLYN M. MANN, CSR 10066 [#408119]

1                        CERTIFICATE OF REPORTER

2           I, CAROLYN M. MANN, a Certified Shorthand

3   Reporter, hereby certify that the witness in the

4   foregoing deposition was by me duly sworn to tell the

5   truth, the whole truth, and nothing but the truth in the

6   within-entitled cause;

7           That said deposition was taken down in

8   shorthand by me, a disinterested person, at the time and

9   place therein stated, and that the testimony of the said

10   witness was thereafter reduced to typewriting, by

11   computer, under my direction and supervision;

12           That before completion of the deposition,

13   review of the transcript [X] was [ ] was not requested.

14   If requested, any changes made by the deponent (and

15   provided to the reporter) during the period allowed are

16   appended hereto.

17           I further certify that I am not of counsel or

18   attorney for either or any of the parties to the said

19   deposition, nor in any way interested in the event of

20   this cause, and that I am not related to any of the

21   parties thereto.

22          DATED: April 21 , 2008.

23

24

25          CAROLYN M. MANN, CSR No. 10066

1          THE WITNESS:  I believe that Mr. Chase and I

2     spoke a lot about the issues that we were faced since he

3     was my direct supervisor through most of my employment

4     at PMI.  So we have had extensive discussions regarding

5     the issues throughout my employment.

6          MR. DUKE:  Q.  When you were regional manager

7     did any of the, any of your sales force relay any

8     concerns about PMI's product lines to you?

9          A.   Yes, I believe so.  To the best of my

10    knowledge, I believe there were, there were discussions.

11         Q.   Tell me the substance of those discussions.

12         A.   I believe that Victoria Oldridge, who was the

13    East Bay sales rep, had expressed concern selling

14    certain stapler, certain stapling product lines, and we

15    talked about how we could strategize to help her with

16    her concerns and her issues.

17         Q.   And so you gave her advice as to how to help

18    her through her concerns and issues; is that correct?

19         A.   To the best of my knowledge, I believe so.

20         Q.   Do you remember what advice you gave her?

21         A.   I believe when I was regional manager I was

22    given advice to myself from other regional managers that

23    I felt needed to be conveyed to my sales force.

24         Q.   What was that advice?

25         A.   To the best of my knowledge, there were

106

1    discussions that certain lot numbers that were shipped

2    to hospitals were actually defective, yet -- and

3    although the company knew that these lot numbers were

4    defective, they were sent out anyhow.  So we needed to

5    manage, or ensure that the surgeons were not using those

6    lot numbers.

7        Q.   Who told you that there were certain lot

8    numbers that were defective?

9        A.   To the best of my knowledge, I believe that

10    was shared with, through practically the entire sales

11    force.  And Scott Connolly, who was the New York sales

12    rep, had formulated or determined that based on his

13    experience, that the, this was the best protocol to

14    manage defective stapling products so that the surgeons

15    would not get their hands on them.

16        Q.   And you testified just a minute ago that the

17    company knew that there were defective lot numbers.

18    What's the basis for your knowledge?

19        A.   The basis of my knowledge is because I believe

20    Keith Mintun, who was, who had many different roles

21    within PMI, but he knew exactly what was defective and

22    what was not, and he was Mike Whitman's right-hand man.

23    And furthermore, one of the other regional managers who

24    was based in New York, I believe his name was Ed

25    Wierczbicki, who was the manager for Scott Connolly,

107

1    expressed deep concern for the product line, and offered
2    a way to help fix the issue.  I believe he was
3    terminated when Mike Whitman did not want to, or was not
4    willing to take his advice.
5        Q.   Do you know that?
6        A.   Based on what was told to me.
7        Q.   Were you present at -- I'm sorry.  There was
8    the name of the guy who was above Connolly that you just
9    mentioned.
10       A.   Ed Wierczbicki.  That was told to me.
11       Q.   So you weren't present at any of these
12   conversations that you've just discussed.
13       A.   No.
14       Q.   You just heard about them through the
15   grapevine?
16       A.   Correct.
17       Q.   Well, let me back up a little bit.
18       A.   Heard about what through the grapevine?  Can
19   you just, can you . . .
20       Q.   Everything you just talked about as far as how
21   the company knew that there were defective lot numbers.
22       A.   No, Keith Mintun knew that there were
23   defective lot numbers.  I knew because I spoke with him
24   about the defective lot numbers.  I did not know
25   firsthand whether Ed Wierczbicki was fired because he,

108

1  because he expressed concern with the, with the surgical

2  stapling lines; that was hearsay.  But Keith Mintun had

3  spoken with me at some point maybe on several occasions

4  with regards to the lot numbers, to the best of my

5  recollection.

6      Q.   So you had several conversations with Keith

7  Mintun about lot numbers, defective lot numbers, in

8  which you told Keith Mintun that there were defective

9  lot numbers; is that correct?

10     A.   No.  To the best of my knowledge, the

11 conversations were more so to ensure that our customers

12 or our surgeons were using the proper lot numbers, not

13 the defective ones.  So I think it was triple zero 300,

14 the lot numbers that were triple zero 300 and greater

15 were actually the lot numbers that were fine.  So if we

16 had any lot numbers that were triple, that were below

17 triple 0300, then we would make sure that the surgeons

18 did not use those products.  So that, there were several

19 conversations to that effect.  I don't know the exact

20 conversation, but that was the gist of the conversations

21 that had, that had occurred.

22     Q.   Was anything else said in these conversations

23 with Keith Mintun?

24     A.   I don't recall other specific things that had,

25 that we had talked about.  I believe that Keith at one

109

1  point had flown up to co-travel with me because he

2  wanted to help win back the California Pacific Medical

3  Center and work with Dr. Lawrence Yee again, and I do

4  remember him stating that or concurring that there are

5  issues or there were issues and that we just have to

6  make sure that he doesn't use the lot numbers that were

7  defective.

8      Q.   Do you remember when the first of these

9  conversations with Keith Mintun occurred?

10     A.   I don't remember the timeline.  I just

11  remember these conversations.

12     Q.   Was there a conversation in 2004?

13     A.   I don't recall when the conversations took

14  place.  I just remember that we had conversations

15  throughout my employment at Power Medical Interventions.

16     Q.   When you say throughout your employment, do

17  you mean really truly throughout your employment, or was

18  it more towards the end of your employment, towards the

19  middle?

20     A.   I believe it was more -- it, it may have

21  started in the middle of my employment and then

22  progressed toward the late, or toward the tail end of my

23  employment.  There's no conversations had occurred when

24  I was recently, when I was hired.

25     Q.   In 2005 were there conversations with

110

```
 1   Mr. Mintun?
 2       A.   I don't recall what year, whether it was, in
 3   fact, 2005, but we did have conversations.
 4       Q.   Did you ever relay any concerns about any of
 5   PMI's product lines to Michael Whitman?
 6       A.   Never.  I --
 7       Q.   Who was Pat Holmes?
 8            MR. MOSLEY:  Well, he was in the middle of --
 9   you have to let the witness answer the question.
10            MR. DUKE:  I did.  He answered the question.
11            MR. MOSLEY:  He said "and," and then you
12   started your new question.
13            MR. DUKE:  Because he answered the question.
14            MR. MOSLEY:  You can answer the question.
15            MR. DUKE:  No, no.
16            MR. MOSLEY:  You can answer the question.
17            MR. DUKE:  Excuse me.  This is my deposition.
18            MR. MOSLEY:  You can't cut him off.  I'm not
19   going to let you cut him off or we're ending the
20   deposition now.  You've cut him off in mid sentence, and
21   if you do that again, the deposition is over.
22            You get to answer that question.
23            MR. DUKE:  No.
24            MR. MOSLEY:  If you have more to say, you get
25   to answer it.
```

111