William I. Edlund, State Bar No. 25013
Alyson L. Huber, State Bar No. 202713
BARTKO, ZANKEL, TARRANT & MILLER
A Professional Corporation
900 Front Street, Suite 300
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152
wedlund@bztm.com
ahuber@bztm.com

Michael L. Rosen, *Admitted Pro Hac Vice*
John E. Duke, *Admitted Pro Hac Vice*
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
Telephone: (617) 832-1000
Facsimile: (617) 832-7000
mrosen@foleyhoag.com
jduke@foleyhoag.com

Attorneys for Defendant Power Medical Interventions

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MYRICK TANTIADO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>POWER MEDICAL INTERVENTIONS, a Pennsylvania corporation, and DOES ONE through FIFTY, inclusive,<br><br>Defendants. | Case No. C 07-02874 CRB<br><br>**DEFENDANT POWER MEDICAL INTERVENTIONS, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION**<br><br>Hearing Date: September 19, 2008<br>Time: 10:00 a.m.<br>Judge: Hon. Charles R. Breyer<br>Courtroom: 8 |

Tantiado tries to oppose PMI's motion with a jumble of arguments grounded in distortions of the undisputed facts and Tantiado's inadmissible speculations and personal opinions. Measured against the undisputed record of the facts relevant to this case, none of Tantiado's rebuttal

-1-

arguments give rise to a genuine issue of material fact sufficient to rescue his wrongful discharge in violation of public policy claim from dismissal. To the contrary, Tantiado's opposition is striking in its failure to adduce even one scintilla of evidence, or even a suggestion, that his "discomfort" in selling a subset of PMI's products played any role whatsoever in PMI's decision to terminate him for having poor sales numbers. Tantiado's attempt to breathe life into his expense reimbursement claim comes at the expense of the genuineness of the allegations he makes to support his wrongful discharge claim. The issues on which Tantiado focuses in his Janus-like opposition are merely diversionary and should not distract this Court from the legal and factual insufficiency of his case. Judgment should enter dismissing Tantiado's wrongful discharge and expense reimbursements claims in their entirety.

## I.     TANTIADO'S OPPOSITION RAISES NO FACTUAL DISPUTES.

Tantiado's opposition challenges not a single material fact in PMI's motion for summary judgment on his wrongful discharge claim. In its motion, PMI adduced the only four facts that matter: (1) Tantiado told Rob Chase that he lacked confidence in some of PMI's products and, as such, was uncomfortable selling them, (2) Tantiado only expressed this discomfort to Chase, (3) Chase never told anyone -- including Michael Whitman -- about Tantiado's discomfort with selling the products, and (4) Whitman was the sole decision maker regarding the termination of Tantiado's employment. In his opposition, Tantiado challenges none of these facts. Nor could he, given his deposition testimony and interrogatory answers.

In an attempt to avoid these undisputed facts, Tantiado offers a self-serving declaration to make his "complaint" look more like the type of complaint he can shoehorn into the case law. Up until Tantiado filed his opposition, his story had been fairly consistent: he told Chase that he was "uncomfortable" selling PMI's products. In his Complaint, for instance, Tantiado states, "Plaintiff explained to his superior, Rob Chase ... that he did not feel comfortable selling this product." (Compl. ¶ 10.) And at one point in his deposition, Tantiado testified that he told Chase, "I just could not sell the circular stapling line any longer, I didn't feel comfortable with it." (Tantiado

-2-

Dep. at 166.) At another point, Tantiado testified that he told Chase, "I would not be able to sell the circular stapling line any longer because of my concern with the stapling line's effectiveness." (Tantiado Dep. at 96.) Chase's recollection was consistent with Tantiado's. Chase testified at his deposition that during his meeting with Tantiado, Tantiado "expressed concern for selling some of the products" because "of a lack of confidence in knowing that the product was going to work 100 percent of the time" and "I recall him saying that he was uncomfortable in selling that product." (Chase Dep. at 23.) But once it came time to save his wrongful discharge claim, Tantiado changed his story. Now, Tantiado states, "During that meeting I told Mr. Chase for the first time that I was no longer willing to sell the stapler product because I believed it was harming patients contrary to its intended purpose." (Tantiado Decl. ¶ 4.) There is clearly a substantial difference between what he said time-and-time again before his wrongful discharge claim was on the line, and what he is saying now. *See* 11-56 Moore's Federal Practice – Civil § 56-14 ("A party generally may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony. This principle of summary judgment practice is often referred to as the 'sham affidavit doctrine.'"). The former statements in the Complaint and at deposition should be accepted, and not the statements in the latter crafted in hopes of defeating a summary judgment motion.

Tantiado also tries to generate a dispute of fact by suggesting that some heretofore unknown person made the decision to fire Tantiado, in addition to or in lieu of Whitman. This tack goes nowhere because, even if someone else made the decision or participated in the decision with Whitman it would not make a difference. Because only three people were at the meeting at which it was decided to terminate Tantiado's employment, there are only three candidates for who the mystery terminator might be: Chase, Whitman, and Pat Holmes. Out of these three, the undisputed evidence is that only Chase knew of Tantiado's "complaint," and he testified -- and there is no evidence to the contrary -- that he had no role in the termination decision. That leaves Whitman and Holmes. But Chase testified at his deposition that he had not discussed Tantiado's "complaint" with either of them. Nor did he raise it at the meeting. So, under Tantiado's "mystery

-3-

1507.011/301045.1   DEFENDANT POWER MEDICAL INTERVENTIONS, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION

man" version of the facts, the decision to fire him must have been made by Whitman, Holmes, or both. No matter which of the three possible permutations is selected, Tantiado cannot establish causation because the undisputed evidence is that neither Holmes nor Whitman knew anything about Tantiado's complaint.

Tantiado's wrongful discharge claim is thus doomed to fail. Since Tantiado only expressed his "discomfort" with selling certain PMI products, he did not engage in any conduct protected by public policy. And since none of the candidates for deciding to fire Tantiado knew that Tantiado had expressed his discomfort to Chase, Tantiado cannot establish that his "complaint" was the reason he was fired. Therefore, PMI remains entitled to judgment as a matter of law on Tantiado's wrongful discharge in violation of public policy claim.

## II. PLAINTIFF DID NOT ESTABLISH A PRIMA FACIE CASE.

Given that the facts are undisputed, Tantiado makes a number of legal arguments to blunt their force in hopes of establishing a *prima facie* case. First, Tantiado claims that he was fired for refusing to engage in an illegal activity, namely selling products that did not meet the standards of the Food Drug and Cosmetics Act ("FDCA"). As an initial matter, up until he filed his opposition, Tantiado's theory of his case was that he was fired for complaining about product safety issues, not that he was fired for refusing to engage in an illegal activity. Be that as it may, PMI agrees that it may violate public policy to terminate an employee who refuses to break the law. All the same, PMI never forced or even requested Tantiado to break the law. During Tantiado's meeting with Chase shortly before Tantiado was fired, Chase told Tantiado not just that he was not required to sell the products he was not comfortable selling but also told him that no one really cared if he hit his quota so long as he was selling something. And, as Tantiado points out in his opposition, Keith Mintun ("Whitman's 'right hand man" according to Tantiado, *see* Henry Decl. Ex. B at 107.) worked to ensure that sales personnel like Tantiado did not sell products that had defective lot numbers. (Henry Decl. Ex. B at 124-128.) These efforts to let Tantiado sell only the products he was comfortable selling and to keep defective products off the market cannot possibly count as forcing Tantiado to engage in an illegal activity. Finally, it is worth pointing out that while he may

-4-

have told Chase he was uncomfortable selling certain PMI products, he continued to try to do so right up until the day he was fired. In fact, Tantiado refused to process a return from the University of California San Francisco (the return underlying his expense reimbursement claim) so that he could try and salvage the account and sell more PMI products to it. In other words, he never refused to sell the products; he only told Chase he was uncomfortable selling them.

Second, once Tantiado's contradictory declaration is disregarded, Tantiado is left with the proposition that an employee's expression of discomfort with his job constitutes protected conduct. But as discussed in more detail in PMI's initial memorandum, there is no "public policy" against firing employees who are uncomfortable performing their jobs or lack confidence in their employer's products. This is not surprising. Employees often convey some discomfort about aspects of their jobs. Expanding the narrow "wrongful discharge in violation of public policy" exception to cover such expressions would swallow the general rule of at-will employment. Since there is no provision of law protecting employees who are uncomfortable with particular aspects of their jobs, Tantiado cannot claim that he was fired for engaging in conduct protected by a well-defined public policy.[1]

Third, Tantiado argues that he should get over the summary judgment hump simply because of the temporal proximity between his conversation with Chase and when he was terminated. The problem with this argument is that temporal proximity only raises an inference that one thing was the result of another. But, here, that inference is rebutted by hard evidence that Chase never told Whitman (or Holmes) about Tantiado's "complaint." As argued in PMI's memorandum of law, Whitman could not have been motivated to terminate Tantiado for engaging in protected activity because he had no idea that Tantiado had engaged in such activity.

---

[1] The very fact that Tantiado saw fit to file a declaration contradicting the allegations in his Complaint and his deposition testimony suggests that Tantiado agrees that his expression of "discomfort" is insufficient to constitute protected activity.

-5-

### III. EVEN IF PLAINTIFF DID SOMEHOW ESTABLISH A PRIMA FACIE CASE, HE OFFERED NOTHING TO CAST DOUBT ON PMI'S LEGITIMATE REASON FOR FIRING HIM.

In its memorandum of law, PMI articulated a legitimate business reason for terminating Tantiado's employment. Tantiado's sales numbers were lower than expected. Moreover, Chase had told Tantiado that all he had to do is *sell something*, even if he did not meet his quota. What is more, Tantiado's 2006 sales numbers had dropped precipitously from prior years. Finally, Whitman terminated Tantiado because his sales numbers were down and Tantiado appeared unmotivated to improve them.

Tantiado offers no evidence whatsoever to rebut PMI's legitimate business reason. He offers nothing to show that his sales numbers were not lower than expected or had not plummeted in 2006. He offers nothing to show that he really had to meet his quota selling the products that he did not want to sell. Instead, Tantiado hangs his entire opposition on the temporal proximity between when he told Chase he was uncomfortable selling some of PMI's products and when he was fired.

This is not enough. In the instant case, it can be assumed *arguendo* that Tantiado has established a *prima facie* case of wrongful discharge by showing that he was fired shortly after he made his "complaint" to Chase. In its motion, however, PMI rebutted this inference of discrimination by articulating a *bona fide* business reason for Tantiado's termination, in particular his low sales numbers and disinclination to do any better. At this point in the analytical model, Tantiado is required to present **evidence** of pretext to save his case for trial. He has not done so. All he has done in his brief is to repeat the elements of his *prima facie* case: namely, that he was fired after he "complained" to Chase. His assertion that the validity of PMI's stated business reason is a jury question, misunderstands the law.[2] Absent **proof** of pretext, Tantiado's claim must be dismissed.

---

[2] Indeed, if Tantiado's creative theory were true, summary judgment could never be granted once a plaintiff had established a *prima facie* case. Obviously, this is not the case.

Even assuming *Mamou v. Trendwest Resorts, Inc.*, No. H031503, 2008 WL 2908333 (Cal. App. 6th Dist. July 30, 2008), is the proper standard to apply in wrongful discharge cases, it does not help his cause. In that case, the Court set forth the familiar burden shifting analysis from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), discussed in more detail in PMI's initial memorandum of law. The Court noted that if a plaintiff makes a *prima facie* case, a presumption of unlawful motivation is raised which, if left unanswered, would require judgment for the plaintiff. However, the employer can dispel the presumption merely by articulating a legitimate reason for the challenged action. If the employer does so, the presumption raised by the plaintiff's *prima facie* case disappears. Even so, the Court held, "citing a legitimate reason for the challenged action will entitle the employer to summary judgment only when the employee's showing, while sufficient to invoke the presumption, is *too weak* to sustain a reasoned inference in the employee's favor." In other words, a strong *prima facie* case may outweigh a weak legitimate business justification.

Here, Tantiado's showing is a paradigm of weakness. All he points to is timing: he made an amorphous "complaint" to one person and then was fired a week later for having pathetic sales numbers by someone else who knew nothing about the "complaint." Aside from the fact that all of the other evidence overwhelms the timing of the firing, the law is clear that timing, standing alone, is insufficient to raise an inference of causation. *Contreras v. Suncast Corp.*, 237 F.3d 756, (7th Cir. 2001) ("absent other evidence of retaliation, a temporal relation is insufficient evidence to survive summary judgment"); *Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000) (temporal proximity alone insufficient to sustain a causal relationship when no other evidence supported the inference that his adverse employment action was in retaliation for his engaging in protected activities).

## IV. THE EXPENSE REIMBURSEMENT CLAIM AND TANTIADO'S DUPLICITY

PMI refers the Court to the arguments PMI made in its memorandum of law as to why Tantiado's expense reimbursement claim fails. However, two points bear mentioning.

-7-

1507.011/301045.1         DEFENDANT POWER MEDICAL INTERVENTIONS, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION

First, this is not an instance of PMI shorting Tantiado. For months before Tantiado's employment terminated, the University of California San Francisco had been trying to return products for which PMI had already paid Tantiado a commission, but Tantiado was either nonresponsive or an obstacle to the University of California San Francisco efforts. Accordingly, once the products were returned, PMI offset the commission it had already paid Tantiado for the returned products against his expense reimbursement and paid Tantiado the difference. Tantiado is essentially trying to get paid twice for not doing his job.

Second, one of the main themes in the wrongful discharge in violation of public policy section of Tantiado's brief is that he was fired a week after he refused to continue engaging in the allegedly illegal act of selling some of PMI's products. He apparently had been engaged in such illegal acts for years, or at least until he refused to do so in his conversation with Chase a week before he was fired. As discussed in PMI's initial memorandum, California Labor Code § 2802(a), the statutory provision governing employee expense reimbursements, provides: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, ***unless the employee, at the time of obeying the directions, believed them to be unlawful.***" If Tantiado's assertions are to be accepted, he believed what he was doing was unlawful. While Tantiado now claims that it was unlikely he incurred any expenses in the week between when he complained and when he was fired, this would only mean that during the one week when he believes he was not doing anything unlawful he incurred no expenses and, consequently, would have no expenses to reimburse. Be that as it may, Tantiado's argument on this point is disingenuous: he is claiming reimbursement for more than $4,000 in expenses, going back to February 2006 and obviously covering the period when Tantiado thought what he was doing was unlawful. As for Tantiado's claim that PMI's argument

-8-

in this regard is "particularly disturbing and cynical," PMI is simply relying on the plain language of a duly-enacted statute the point of which is to provide an incentive for employees not to commit illegal acts. Given that Tantiado's wrongful discharge claim is premised on this same value, it is ironic that he seeks to read this proviso out of the expense reimbursement statute.

## CONCLUSION

For the above reasons, and the reasons set forth in PMI's initial Memorandum of Points and Authorities in Support of its Motion for Partial Summary Judgment, PMI respectfully requests that the Court grant its Motion for Partial Summary Judgment.

DATED: August 22, 2008

                                            Respectfully submitted,

                                            BARTKO, ZANKEL, TARRANT & MILLER
                                            A Professional Corporation

                                            FOLEY HOAG LLP

                                            By: _____
                                                     John E. Duke
                                                    Attorneys for Defendant
                                            POWER MEDICAL INTERVENTIONS